UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re:<br>    MARCO C. RUMBIN,<br>        *Debtor* | : : : : | Chapter 13<br>Case No. 18-31424 (AMN)<br>Re: ECF No. 30 |
| In re:<br>    JOSEPH J. SABATINI, JR.,<br>        *Debtor* | : : : : | Chapter 13<br>Case No. 18-31425 (AMN)<br>Re: ECF No. 22 |
| ROBERTA NAPOLITANO<br>        *Movant,*<br>v.<br>MARCO C. RUMBIN and<br>JOSEPH J. SABATINI, JR.,<br>        *Respondents* | : : : : : : : : : | |

**MEMORANDUM OF DECISION AND RULING
DETERMINING WHETHER SECURED DEBT LIMIT PURSUANT TO
11 U.S.C. § 109(e) IS EXCEEDED IN LIGHT OF PRIOR
CHAPTER 7 DISCHARGE AND VALUATION PURSUANT TO 11 U.S.C. § 506**

The Chapter 13 cases of Marco C. Rumbin and Joseph J. Sabatini, Jr. ("Rumbin", "Sabatini", and, collectively, the "Debtors")[1] present the same legal issue and substantially the same facts. The Chapter 13 Trustee moved to dismiss both cases based on each Debtors' ineligibility for relief under Chapter 13, having exceeded the statutory limit for secured debt stated in 11 U.S.C. § 109(e).[2] See, Rumbin Case, ECF No. 30; Sabatini Case, ECF No. 22 (the "Motions"). Because I conclude that for purposes of §

---

[1] Case number 18-31424 by Marco C. Rumbin will be referred to as the "Rumbin Case", and case number 18-31425 by Joseph J. Sabatini, Jr. will be referred to as the "Sabatini Case."

[2] Unless otherwise noted, all statutory citations refer to the Bankruptcy Code, Title 11, United States Code. The Chapter 13 Trustee did not move to dismiss these cases on the basis either Debtor exceeded the statutory unsecured debt limit set forth in 11 U.S.C. § 109(e).

1

109(e), "debts" are not necessarily the same as "claims," the Motions will be denied, without prejudice to reconsideration after a valuation pursuant to § 506(a). The secured debts here, if they are determined to be unsecured pursuant to § 506, are not enforceable as either *in rem* or *in personam* claims against the Debtors or their Chapter 13 bankruptcy estates, and therefore would not need to be treated in a Chapter 13 plan.

I note the Debtors have filed motions to avoid liens pursuant to 11 U.S.C. § 522(f), and have indicated their intent to seek relief under 11 U.S.C. § 506.[3] The value of the real properties and the balances on liens that encumber them appear undisputed. I further note it appears the relevant liens are only partially unsecured in the Sabatini Case, while the relevant liens appear to be wholly unsecured in the Rumbin Case. *See, Table Summarizing Values*, below. The relevant liens encumber both Debtors' residences, and so § 1322(b)(2) is not implicated. Finally, I note the holders of the liens in issue here did not file proofs of claim before the deadline to do so.

## JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over these cases by virtue of 28 U.S.C. § 1334(b). This Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A).

---

[3] The Debtors indicated their intent to seek relief pursuant to § 506 if the Motions to Dismiss are denied. Rumbin's original Chapter 13 plan stated that relief would be sought pursuant to 11 U.S.C. § 506, although no motion seeking a determination of the secured value of the mortgages in issue here has been filed. Rumbin Case, ECF No. 5, p. 1. In Sabatini's Case, a box regarding Section 506 motions was checked "No" on Sabatini's Chapter 13 plan (Sabatini Case, ECF No. 5), but the counsel for Mr. Sabatini expressed during a hearing in August 2019 that the box should have been checked "Yes." *See* Sabatini Case, ECF No. 57. Both Debtors expressed their intention to file amended Chapter 13 plans.

2

## **THE ISSUE PRESENTED**

The Chapter 13 Trustee seeks dismissal because presently the outstanding balance on the liens against each of the Debtors' homes exceed the statutory secured debt limit of $1,184,200.00 pursuant to 11 U.S.C. § 109(e).[4]  Rumbin Case, ECF No. 30; Sabatini Case, ECF No. 22.  The question presented is whether § 109(e) bars a debtor from taking advantage of Chapter 13 relief if his or her property is encumbered by a non-recourse lien and the property to which the lien attaches has little or no value.

## **FACTS**

The Debtors were partners in a business venture for which they granted large mortgages on their homes (the "Business Mortgages") to secure personal guaranties (the "Guaranties") to the Bank of Southern Connecticut (the "Mortgage Holder").  The Debtors previously filed Chapter 7 bankruptcy cases on January 30, 2013, and each received an order of Chapter 7 discharge on April 23, 2013 (the "Chapter 7 Discharge Order(s)").  *See,* Case Nos. 13-30187 and 13-30189.  The Chapter 7 Discharge Orders eliminated any personal liability of the Debtors for any dischargeable debt, including the Guaranties. After entry of the Chapter 7 Discharge Orders, the Business Mortgages remained enforceable *in rem* claims against the Debtors' real properties that were also non-recourse as to the Debtors individually.

---

[4]   The Chapter 13 Trustee, following the thread of discussion of this topic within the Second Circuit, relies in part on a relatively recent discussion of the definition of "claim," and its relationship to enforceability, by the United States Supreme Court in *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1412, 197 L. Ed. 2d 790 (2017).  The Trustee argues the current inability to collect the relevant lien amounts (since they are non-recourse and unsupported by value) does not affect their status as claims, and I agree.  The Chapter 13 Trustee points out that the *Midland Funding* court also concluded that, an "unenforceable claim is nonetheless a 'right to payment,' hence a 'claim,' as the Code uses those terms." *Midland Funding, LLC*, 137 S. Ct. at 1412.  But, as set forth in this Memorandum of Decision, the question here is whether the secured claims are also secured debts of the individual debtors for purposes of § 109(e) if the liens are valueless under § 506.

More than five years later, on August 29, 2018 (the "Petition Date"), the Debtors, commenced these cases by filing voluntary Chapter 13 bankruptcy petitions seeking to reorganize their current indebtedness – including post-discharge priority tax claims and post-discharge non-priority unsecured claims -- through Chapter 13. Because more than four years passed after the Debtors received their Chapter 7 Discharge Orders and before the Petition Date for these cases, they each may be eligible for a Chapter 13 discharge upon completion of a confirmed Chapter 13 plan. See 11 U.S.C. § 1328(f)(1).

Rumbin owns a single-family home located at 95 Tomlinson Road, Seymour, Connecticut ("Rumbin's Property") that he asserts is worth $460,000.00. See Rumbin Case, ECF No. 21. Based on the record here, the encumbrances of record against Rumbin's Property may be summarized as follows:

| Type | Holder | Lien Amount | Proof of Claim Filed |
|---|---|---|---|
| Mortgage | Seterus, Inc. | $504,654.17 | No |
| Mortgage | Bank of Southern Conn. | $1,500,000.00 | No |
| Mortgage | Bank of Southern Conn. | $390,000.00 | No |
| Mortgage | Bank of Southern Conn. | $423,960.49 | No |
| Mortgage | Bank of Southern Conn. | $750,000.00 | No |
| Judgment Lien | Berkshire Energy Depot, LLC | $39,617.55 | Yes ($32,117.55) |
| Total | | $3,608,232.21 | |

Sabatini owns a single-family home located at 2 Garfield Avenue, Derby, Connecticut ("Sabatini's Property"), and asserts it is worth $175,000.00. See Sabatini Case, ECF No. 21. Based on the record here, the encumbrances of record against Sabatini's Property may be summarized as follows:

| Type | Holder | Lien Amount | Proof of Claim Filed |
|---|---|---|---|
| Mortgage | PHH Mortgage Servicer | $140,135.00 | Yes ($137,628.81) |
| Mortgage | Bank of Southern Conn. | $1,500,000.00 | No |
| Mortgage | Bank of Southern Conn. | $390,000.00 | No |
| Mortgage | Bank of Southern Conn. | $423,960.49 | No |

4

| | | | |
|---|---|---|---|
| Mortgage Judgment Lien | Bank of Southern Conn. Berkshire Energy Depot, LLC | $750,000.00 $39,617.55 | No Yes ($32,117.55) |
| Total | | $3,243,713.04 | |

If the Debtors were successful on their anticipated Motions to Determine Claim Status under Section 506, the value of the property encumbered by the Business Mortgages might be summarized as follows[5]:

| TABLE SUMMARIZING VALUES | | | |
|---|---|---|---|
| Case | Value of Property as of Petition Date | Balance Owed on Senior Liens as of Petition Date | Value of Business Mortgages as of Petition Date After Anticipated § 506 Motion |
| **Rumbin's Case** | $460,000.00 | $504,654.17 | $0.00 |
| **Sabatini's Case** | $175,000.00 | $140,135.00 | $34,865.00 |

The Debtors' Chapter 13 plans[6] included proposals to pay significant dividends to unsecured creditors holding claims that were not previously discharged by the Chapter 7 Discharge Orders.[7] Rumbin proposed to pay $1,400.00 per month for sixty (60) months, with unsecured claims totaling $166,000.00 to be paid a dividend of not less than 21.00%. Rumbin Case, ECF No. 5. Sabatini proposed to pay $1,400.00 per

---

[5]    This information appears undisputed by the parties and is taken from each debtor's Schedule A/B and Schedule D, filed in each case. This information is included to assist the reader but is not a finding or conclusion regarding relief pursuant to § 506, since no motion seeking such relief is pending.

[6]    The Debtors' plans were denied with leave to amend on or before August 31, 2019, which is typical in a case in this District. Rumbin Case, ECF No. 35; Sabatini Case, ECF No. 28. Chapter 13 plans are frequently denied with leave to amend to permit a Chapter 13 debtor to confirm his or her plan to filed proofs of claim, once the proof of claim deadline has passed. It is clear from the record of the hearings in these cases that the Debtors would propose updated, but similar, Chapter 13 plans based on this Memorandum of Decision and Ruling.

[7]    Both Debtors have accumulated additional debt since the entry of their Chapter 7 Discharge Orders that would be treated as allowed unsecured claims in a Chapter 13 plan.

month for sixty (60) months, with unsecured claims totaling approximately $178,000.00 to be paid a dividend of not less than 21.00%. Sabatini Case, ECF No. 5.

## DISCUSSION

### The "Chapter 20" Bankruptcy Process

Cases like these are commonly referred to as "chapter 20" cases since they commence with a Chapter 7 case that is followed by a Chapter 13 case. In a typical chapter 20 case, a debtor utilizes Chapter 7 to extinguish any personal (*in-personam*) liability on mortgages and other debts. After receiving a Chapter 7 discharge, a debtor will commence a second case, this time under Chapter 13.

Typically, the Chapter 13 case is used to address the repayment of non-dischargeable debt or post-discharge debt, and, sometimes the relief sought includes an order valuing a secured claim as unsecured in whole or part, pursuant to 11 U.S.C. § 506. Here, the Debtors seek to address debt that accumulated after their Chapter 7 cases, including debts to federal and state taxing authorities, and non-priority unsecured debt. If a debtor completes the Chapter 13 plan, then a lien determined to be unsecured under § 506(a) would be of no further effect against the debtor's property.[8]

### Eligibility Under § 109(e) and the Purpose of Chapter 13

Eligibility to be a Chapter 13 debtor stems from 11 U.S.C. § 109(e), and the debtor bears the burden to establish the conditions are met. *In re Shukla*, 550 B.R. 204, 210 (Bankr. E.D.N.Y. 2016). In contrast to the provisions involving Chapter 7 debtors, Chapter 13 debtors "cannot owe debts in too large an amount and still expect to take advantage

---

[8] I note that in my recent decision in *In re: Oboma*, 2019 WL 3283136 (Bankr.D.Conn. 2019), I concluded eligibility for a Chapter 13 discharge is not required for a debtor to be eligible for relief pursuant to 11 U.S.C. § 506.

6

of the streamlined rehabilitative scheme provided in chapter 13." 2 Collier on Bankruptcy ¶ 109.06 (16th 2019). "Thus, the core of subsection (e) is its monetary limitation on eligibility for chapter 13 relief." 2 COLLIER ON BANKRUPTCY ¶ 109.06 (16th 2019).

"The monetary limitations of [§ 109(e)] reflect Congress's recognition that a chapter 11 reorganization might be too cumbersome a procedure for a sole proprietor or individual with a small amount of debt." 2 COLLIER ON BANKRUPTCY ¶ 109.06 (16th 2019). At the same time, the debt limits "ensure that chapter 13 is not used by individuals with large businesses in which the creditor protections of chapter 11, such as voting and the disclosure statement, are more important." 2 COLLIER ON BANKRUPTCY ¶ 109.06 (16th 2019).

While a § 109(e) analysis generally begins with a review of the debtor's schedules, a court may also consider materials outside of the debtor's schedules. *Shukla*, 550 B.R. at 211 (Bankr. E.D.N.Y. 2016)(citing *In re Moore*, 2012 WL 1192776, at *5 (Bankr. N.D.N.Y. 2012)(finding debtor may be ineligible under Chapter 13 after a review of debtor's schedules, the proof of claim, and other readily ascertainable information); *Mazzeo v. United States (In re Mazzeo),* 131 F.3d 295, 305 (2d Cir.1997) (finding debt to be easily ascertained from statutory provisions and tax returns)); *see also, Stebbins v. Artificial Horizon, Ltd., No.*, 2016 WL 1069077, at * 4 (E.D.N.Y. Mar. 17, 2016). Here, it is appropriate to consider not only the Debtors' bankruptcy schedules but also their Chapter 13 plans, their stated intentions to seek relief pursuant to § 506, and the stated purpose of the Chapter 13 plans (to address post-discharge debt) to determine whether the Debtors are eligible for relief under Chapter 13.

The Bankruptcy Code limits the eligibility to be a Chapter 13 debtor to, "an *individual* with regular income *that owes*, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $394,725 and noncontingent, liquidated, *secured debts* of less than $1,184,200."[9]  11 U.S.C. § 109(e)(emphasis added).  The Bankruptcy Code defines "debt" as "liability on a claim," so it seems that a debt is not the precise equivalent of a claim.  11 U.S.C. § 101(12).  Liability is not defined in the Bankruptcy Code, but Black's Law Dictionary defines it as the, "quality, state, or condition of being legally obligated or accountable."  Black's Law Dictionary, Eleventh Edition (2019); *see also,* MERRIAM WEBSTER, https://www.merriam- webster.com/ dictionary/liability#legalDictionary (last visited August 12, 2019)(stating the legal definition of liability is defined as, "something for which one is liable as a financial obligation").

A "claim" is defined in the Bankruptcy Code as a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment," but the term liability is not used.  11 U.S.C. § 101(5).  Claims may be determined to be unenforceable, after objection, and such determinations are part of the administration of a bankruptcy estate that has assets to distribute.

For purposes of § 109(e), then, a claim must be evaluated for enforceability against the individual to determine if it is also a debt since, "not all claims are debts of the debtor." 2 COLLIER ON BANKRUPTCY ¶ 101.12 (16th 2019).  Here, the Court must apply a debt limit, not a claim limit.  Congress could have used the word "claim" in § 109(e) but chose to use the defined term "debt" instead.

---

[9]  Pursuant to 11 U.S.C. § 104, the monetary limits in § 109(e) are periodically adjusted and these were the limits in effect on the Petition Date.

Regarding the availability of Chapter 11 relief for these Debtors, I note that while the Debtors are individuals who appear to have run small business(es), their creditors have not appeared in the case seeking the protections ensured by a Chapter 11 process, such as the right to the disclosure statement process or the plan voting rights afforded to Chapter 11 creditors.  One purpose of Chapter 13 is to provide owners of small businesses – who cannot afford the higher attorney's fees and expenses of seeking relief under Chapter 11 – a way to address their debt.  During the Chapter 13 plan process, any creditor or party in interest may object to the confirmation of a Chapter 13 plan, so creditors here would still be heard.  In the absence of creditors clamoring for the heightened protections of Chapter 11 in what would undoubtedly be a more expensive process (for all the parties), it is reasonable to conclude a Chapter 13 process would not prejudice creditors or parties in interest in these cases.

Treatment of Secured Debts When Applying Section 109(e) Debt Limits

A "mortgage interest that survives the discharge of a debtor's personal liability is a 'claim' within the terms of § 101(5)", since even after, "the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property." *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150, 2154 (1991).  This distinction is often discussed using the term "*in rem*" for a right to enforce a claim against property, and the term "*in personam*" for right to enforce a claim against a person.

A bankruptcy discharge eliminates *in personam* liability, while a creditor's *in rem* rights embodied by a lien or mortgage survive.  I recognize that some courts rely on the *Johnson* decision to support various conclusions about the import of *in rem* rights that

remain after a Chapter 7 discharge order. However, *Johnson* did not reach the issue of the specific treatment required for a non-recourse claim. *See, In re Miller*, 462 B.R. 421, 431 (Bankr. E.D.N.Y. 2011). Within the bankruptcy courts of the Second Circuit there are examples of differing approaches to the question of a debtor's eligibility for Chapter 13 relief when a prior Chapter 7 case has eliminated the *in personam* liability but not the *in rem* liability, and the surviving lien amounts exceed the debt limit set forth in § 109(e). *See, In re: Wimmer,* 512 B.R. 498 (Bankr. S.D.N.Y. 2014)(debtors were ineligible for chapter 13 bankruptcy relief since the unsecured portions of liens counted toward the debt limit even though the personal liability of the debtors for such debts was discharged in a prior bankruptcy); *Cavaliere v. Sapir,* 208 B.R. 784 (D.Conn. 1997)(debtors were eligible since non-recourse debt deemed unsecured under § 506(a) was unenforceable and did not count towards debt limit); *In re Fioriglio,* 2018 WL 1629779, at *1 (Bankr. E.D.N.Y. 2018)(non-recourse lien considered as a secured claim for purposes of 11 U.S.C. § 109(e), but no issue of prior Chapter 7 discharge).

<u>Timing of § 506 Determination</u>

In litigation around the country to resolve how a court, should determine the amount of secured debt for the purposes of § 109(e), "[m]ost courts, including the Courts of Appeals for the Fourth, Seventh and Eighth Circuits, have held that the valuation test of section 506(a) should be used in making a determination as to whether there is an unsecured deficiency." 2 COLLIER ON BANKRUPTCY ¶ 109.06 (16th 2019). Section 506(a)(1) provides that an allowed claim of a creditor secured by a lien on property in which the estate has an interest, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, and is an unsecured claim to

the extent that the value of such creditor's interest is less than the amount of such allowed claim. 11 U.S.C. § 506(a)(1). "Although [§ 506(a)] speaks of 'allowed claims,' and a secured claim typically is not 'allowed' at the time eligibility is usually determined, most courts have concluded that section 506(a) should be applied to bifurcate the undersecured claim of a secured creditor into secured and unsecured portions for purposes of determining eligibility under section 109(e)." 4 COLLIER ON BANKRUPTCY ¶ 506.03 (16th 2019), citing *In re Scovis*, 249 F.3d 975, 983 (9th Cir. 2001); *In re Balbus*, 933 F.2d 246, 247 (4th Cir. 1991); *Miller v. United States*, 907 F.2d 80, 81 (8th Cir. 1990); *In re* Day, 747 F.2d 405, 407 (7th Cir. 1984); *In Re Toronto*, 165 B.R. 746, 754 (Bankr.D.Conn 1994); *In Re Winder*, 171 B.R. 728, 730-31 (Bankr.D.Conn. 1994).

Here, because the Debtors do not have motions pursuant to § 506 pending, I will set a deadline for the Debtors to seek such relief, and, will reconsider their eligibility for Chapter 13 should the secured debts ultimately be determined to be valued at amounts exceeding the limit established by § 109(e).

### Section 506's Impact on the Secured and Unsecured Debt Limits

Here, if the secured debts were to be bifurcated as suggested in the tables above, and then were required to be treated as unsecured debts, the cases would have to be dismissed because the unsecured debt limit would then be exceeded. The bankruptcy treatise, Collier on Bankruptcy, concludes that after application of §506(a), only the secured portion of a debt is counted towards the limit on secured debt, and the unsecured portion is added to the debtor's other unsecured obligations and would count towards the limit on unsecured indebtedness. 4 COLLIER ON BANKRUPTCY ¶ 506.03 (16th 2019). Many courts agree and have determined that if the debt is non-recourse, the deficiency

should not be added to the unsecured debt total. 2 COLLIER ON BANKRUPTCY ¶ 109.06 (16th 2019); *see also, In re Free*, 542 B.R. 492 (B.A.P. 9th Cir. 2015) (wholly unsecured mortgage debt discharged in a prior chapter 7 case cannot be counted toward unsecured debt limit); *see also, Cavaliere v. Sapir*, 208 B.R. 784 (D. Conn. 1997) (non-recourse debt discharged in previous chapter 7 case not counted toward debt limits); *but see, In re Wimmer*, 512 B.R. 498 (Bankr. S.D.N.Y. 2014)(unsecured portion of mortgage debt discharged in prior chapter 7 case included in § 109(e) unsecured debt calculation because "debt" is merely a different way to say "claim"); *In re Fioriglio,* 2018 WL 1629779, at *1 (Bankr. E.D.N.Y. 2018)(same).

While the parties here disagree as to whether the Business Mortgages should be included as secured debt for purposes of § 109(e), they appear to agree that any unsecured portion of the debts are non-recourse as to the Debtors since the Chapter 13 Trustee does not seek dismissal based on an analysis of unsecured debt limits. When a secured claim is non-recourse, although the lien holder may have a claim against the debtor's property, as defined by §§ 101(5) and 102(2), the individual debtor, as opposed to his or her property, does not have any liability on the underlying debt and has no unsecured "debt" to the creditor as defined by § 101(12). *See,* 2 COLLIER ON BANKRUPTCY ¶ 109.06 (16th 2019). "Because section 109(e) speaks of the debtor's unsecured debts, a nonrecourse claim against only the debtor's property should not be counted as an unsecured debt, even if the collateral is worth less than the claim." 2 COLLIER ON BANKRUPTCY ¶ 109.06 (16th 2019); *see also, In re Free*, 542 B.R. at 496 (holding that "debts that were discharged in chapter 7 are not 'unsecured debts'" for purposes of § 109(e)).

Treatment of Valueless Secured Claims in Chapter 13 Plan

As part of a consideration of Chapter 13 eligibility under § 109(e), it is reasonable to also consider whether the Debtors here could propose a confirmable plan. The secured debt totals millions of dollars, which is beyond the debt limitation for Chapter 13 whether secured or unsecured. The Chapter 13 Trustee's Motion implies that the unsecured portion of the Business Mortgages would need to be paid through a Chapter 13 plan as unsecured claims (relying on *Wimmer*), although the only ground on which the Chapter 13 Trustee moved to dismiss the cases was the secured debt limit of § 109(e) (and the memoranda filed is a bit unclear on the movant's position on this last point: whether any unsecured debt attributable to the liens in issue here must be paid through a plan).

To the extent the Chapter 13 Trustee adopts the reasoning of several courts that conclude that a Chapter 13 debtor must treat the unsecured amount of a lien for which *in personam* liability was discharged in a prior Chapter 7 case as an unsecured claim for Chapter 13 plan purposes, I disagree. While many courts would resurrect *in personam* liability and require such treatment, I find a rationale recently articulated by the Bankruptcy Appellate Panel for the Ninth Circuit ("9th Circuit BAP") to be more persuasive. Considering the effect of the discharge injunction under § 524 of the Bankruptcy Code, the 9th Circuit BAP adopted another bankruptcy court's decision and concluded, "the chapter 7 discharge enjoins enforcement of the claim against the debtor personally, and nothing in the Bankruptcy Code authorizes resurrecting the creditor's *in personam* rights." *In re Washington*, 2019 WL 3454052, at *3 (B.A.P. 9th Cir. July 30, 2019)(citing, *In re Rosa*, 521 B.R. 337, 340-341 (Bankr. N.D. Cal. 2014). Respectfully, I will follow the *Rosa* decision and depart from contrary authority within this Circuit and elsewhere, recognizing

13

there are many courts that disagree. As the *Rosa* court articulated, to hold otherwise would be to impose liability on a Chapter 13 estate when none exists for the Chapter 13 debtor. *In re Rosa*, 521 B.R. at 341. This is not what Chapter 13 is meant to do. I also disagree with the conclusion that by seeking relief under Chapter 13 after a Chapter 7 discharge, a debtor seeks to voluntarily repay the discharged debt under § 524(f).

## **CONCLUSION**

Here, I conclude the Debtors are eligible to be Chapter 13 debtors pursuant to 11 U.S.C. § 109(e), subject to further review. The Motions to Dismiss will be denied, without prejudice to reconsideration after a ruling pursuant to 11 U.S.C. § 506.

For the foregoing reasons, it is hereby

**ORDERED:** That, the Chapter 13 Trustee's Motion to Dismiss in Case No. 18-31424 (ECF No. 30) is DENIED; and it is further

**ORDERED:** That, the Chapter 13 Trustee's Motion to Dismiss in Case No. 18-31425 (ECF No. 22) is DENIED; and it is further

**ORDERED:** That, should the Debtors seek relief pursuant to 11 U.S.C. § 506(a), they shall file appropriate motions on or before September 30, 2019.

Dated on August 15, 2019, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut